IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BUILDERS MUTUAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> J.L. ALBRITTAIN, INC., et al. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) 1:19-cv-1315 (LMB/MSN) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

In this civil action, plaintiff Builders Mutual Insurance Company ("plaintiff" or "BMIC") seeks a declaratory judgment that it owes no duty to defend its insureds who have been sued in three state court actions arising out of the construction and sale of three townhouses in Arlington, Virginia. The insured defendants are J.L. Albrittain, Inc. and its agents Tom Albrittain, Nancy Albrittain, and the decedent of the Estate of John L. Albrittain, Jr. (collectively, "Albrittain defendants"), as well as Cathedral View, LLC and its agent Sidney Simmonds (collectively, "Cathedral defendants") (collectively with the Albrittain defendants, "underlying defendants"). All of the plaintiffs in the state court actions, as well as the insured defendants, are defendants in this declaratory judgment action.[1] Before the Court is BMIC's Motion for Summary Judgment ("Motion"), which seeks judgment on Counts 1 and 2 of its five-count complaint. For the following reasons, the Motion will be granted.

---

[1] Additionally, the Frank M. Sands Sr. Revocable Trust is a defendant in two of the state court actions and Sands Family Trust Sub II LLC is a defendant in one of the state court actions; however, neither is a party to this declaratory judgment action because neither is an insured of BMIC.

I. BACKGROUND

A. **Factory Background**[2]

J.L. Albrittain, Inc. and Cathedral View, LLC were business partners in the construction and sale of four townhouses on North Glebe Road in Arlington, Virginia. Seale v. Cathedral View, LLC, et al., Case No. CL19001554-00 (Va. Cir. Ct. 2019) ("Seale Complaint") [Dkt. 1-3] ¶ 17; Albrittain v. The Frank M. Sands Sr. Revocable Trust, et al., Case No. CL19001988-00 (Va. Cir. Ct. 2019) ("W. Albrittain Complaint") [Dkt. 1-4] ¶¶ 19–20; Ward v. Cathedral View, LLC, et al., Case No. CL19002626-00 (Va. Cir. Ct. 2019) ("Ward Complaint") [Dkt. 1-5] ¶ 17. On March 31, 2017, the Cathedral defendants sold one townhouse to James and Erin Seale (collectively, "Seales") for $2,825,000. Seale Complaint ¶¶ 16, 25. On December 18, 2017, the Cathedral defendants sold another townhouse to Robert and Michelle Ward (collectively, "Wards") for $2,650,000. Ward Complaint ¶¶ 24, 29. On February 1, 2018, The Frank M. Sands Sr. Revocable Trust and Sands Family Trust Sub II LLC, both of which "took over for" the Cathedral defendants after the Cathedral defendants "ceased operation," sold another townhouse to Whitney Albrittain ("W. Albrittain") (collectively with the Seales and the Wards, "underlying plaintiffs") for $2,650,000. W. Albrittain Complaint ¶¶ 14–15, 21.

Shortly after moving into their respective townhouses, the underlying plaintiffs discovered that the townhouses had significant water leaks and water damage. Seale Complaint

---

[2] The parties do not dispute that Counts 1 and 2 can be resolved without discovery because they require application of the "Eight Corners Rule," pursuant to which Virginia courts "determine if an insurer has a duty to defendant a lawsuit against [an] insured." Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 792 F.3d 520, 528 (4th Cir. 2015). "Under the Eight Corners Rule, [Virginia courts] compare the 'four corners' of the underlying complaint with the 'four corners' of the policy to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." Id. Accordingly, the facts included in this section will be drawn solely from the state court complaints and the policies issued by BMIC.

2

¶ 27; W. Albrittain Complaint ¶ 25; Ward Complaint ¶¶ 31, 34. The underlying plaintiffs subsequently engaged various professionals to inspect the leaks and damage. Seale Complaint ¶ 30; W. Albrittain Complaint ¶ 29; Ward Complaint ¶ 35. These professionals observed substantial water infiltration throughout the townhouses attributable to design and construction defects. Seale Complaint ¶¶ 31–35; W. Albrittain Complaint ¶¶ 30–35; Ward Complaint ¶¶ 36–39. Thereafter, on numerous occasions, the underlying plaintiffs asked the underlying defendants to remedy the leaks and damage, but the underlying defendants failed to do so. Seale Complaint ¶¶ 67–70; W. Albrittain Complaint ¶¶ 46–47; Ward Complaint ¶¶ 42–43.

Each of the state court complaints alleges that the underlying defendants knew of the water leaks before they sold the townhouses, having attempted without success to repair the leaks throughout the construction process. See, e.g., Seale Complaint ¶¶ 46–47, 49–52; W. Albrittain Complaint ¶¶ 39–40, 43; Ward Complaint ¶¶ 40–41, 48. Each complaint also alleges that the underlying defendants intentionally concealed or made misrepresentations regarding the leaks to induce the underlying plaintiffs into purchasing the townhouses. See, e.g., Seale Complaint ¶¶ 60–66; W. Albrittain Complaint ¶¶ 44–45; Ward Complaint ¶¶ 53–56. Lastly, each complaint alleges that, as a result of the underlying defendants' concealment and misrepresentations, the townhouses suffered significant physical damage, including saturated walls, mold, and rusted heating and cooling systems, as well as a permanent diminution in value. See, e.g., Seale Complaint ¶¶ 53–54, 71; W. Albrittain Complaint ¶¶ 36–38, 48; Ward Complaint ¶¶ 44–46, 61.

Based on this and other alleged conduct, the underlying plaintiffs have asserted claims for breach of the implied statutory warranty, fraud/fraud in the inducement, and violation of the

Virginia Consumer Protection Act against the underlying defendants.³ Seale Complaint ¶¶ 78–88, 97–111, 133–145; W. Albrittain Complaint ¶¶ 51–62, 63–90; Ward Complaint ¶¶ 80–104, 111–125. The Seales have also asserted claims for breach of express warranty, breach of limited warranty, and constructive fraud. Seale Complaint ¶¶ 89–96, 112–32. The Wards have also asserted claims for breach of contract and constructive fraud. Ward Complaint ¶¶ 68–79, 105–10.

BMIC issued a general commercial liability insurance policy ("Policy") which covered the insured defendants for a policy period from January 1, 2017 through January 1, 2018, and issued a renewal of the Policy for a policy period from January 1, 2018 through January 1, 2019. [Dkt. 1-6 at 3, 22; Dkt. 1-7 at 3, 22]. With regard to coverage for bodily injury and property damage liability, Coverage A(1)(a) of the Policy provided that:

> We will pay those sums that the insured becomes legally obligated to pay as a result of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

[Dkt. 1-6 at 167; Dkt. 1-7 at 156]. The scope of coverage was further defined in Coverage A(1)(b) of the Policy, which stated: "This insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" Id. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Dkt. 1-6 at 181; Dkt 1-7 at 170].

---

³ The W. Albrittain Complaint does not assert any claim against the Cathedral defendants.

The Policy also contained numerous exclusions regarding bodily injury and property damage liability. As relevant here, Coverage A(2)(a) excluded "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." [Dkt. 1-6 at 168; Dkt. 1-7 at 157]. Coverages A(2)(j)(5) and A(2)(j)(6), respectively, excluded "'[p]roperty damage' to . . . [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations," and "'[p]roperty damage to . . . [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." [Dkt. 1-6 at 171; Dkt. 1-7 at 160]. And Coverage A(2)(l), as modified by Endorsement 2294, excluded "'[p]roperty damage' to 'your work' arising out of ['your work'] or any part of ['your work'] and included in the 'products-completed operations hazard.'" [Dkt. 1-6 at 61, 171; Dkt. 1-7 at 51, 160]. "Your work" is defined as "[w]ork or operations performed by you or on your behalf; and [m]aterials, parts or equipment furnished in connections with such work or operations." [Dkt. 1-6 at 182; Dkt. 1-7 at 171].

### B. Procedural History

On October 15, 2019, BMIC filed the pending five-count complaint seeking a declaratory judgment that it owes no duty to defend its insureds, the Albrittain defendants and the Cathedral defendants, in the three state court actions. [See Dkt. 1]. Specifically, BMIC alleges in Counts 1 and 2, respectively, that it "owes no duty to defend its insureds" because the damages alleged in the state court complaints "do not constitute 'property damage' caused by an 'occurrence,'" and "are excluded from coverage under multiple policy exclusions." Id. at 24–25. Count 3, 4, and 5, respectively, allege that "[t]he policies' 'known loss' provisions preclude coverage," that "[t]here is no coverage due to the breach of the policies' notice conditions," and that "[t]here is no coverage for any property damage under [Coverage A(2)(j)] of the policies." Id. at 29, 30–32.

5

BMIC has asserted that each count represents at least one independent reason for which it has no duty to defend its insureds in the state court actions. [See Dkt. 38, 42, 43]. On February 21, 2020, four motions to dismiss filed by multiple defendants were denied, and BMIC was ordered to file a motion for summary judgment as to Counts 1 and 2 of its complaint because the parties did not dispute that resolving those counts could be dispositive and would only require application of the "Eight Corners Rule," for which discovery would not be necessary. [See Dkt. 47].

On March 13, 2020, BMIC filed its Motion for Summary Judgment. [See Dkt. 49]. On April 17, 2020, four briefs in opposition were filed by the underlying plaintiffs, the Albrittain defendants, Cathedral View, LLC, and Sidney Simmonds, respectively. [See Dkt. 54–58]. Sidney Simmonds' and Cathedral View, LLC's briefs are virtually identical, and the underlying plaintiffs' and Albrittain defendants' briefs "adopt by reference the arguments, authorities, and facts" contained in Cathedral View, LLC's and Sidney Simmonds' briefs. Id. Accordingly, all of the defendants in this action have advanced the same arguments in opposition to BMIC's Motion for Summary Judgment.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Yosco v. Aviva Life & Annuity Co., 753 F. Supp. 2d 607, 609 (E.D. Va. 2010). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. "In reviewing the record on summary judgment, the court must draw any inferences in the light most favorable to the non-moving party." Id.

### B. Analysis

"Virginia applies the 'Eight Corners Rule' to determine if an insurer has a duty to defend a lawsuit against [an] insured." Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 792 F.3d 520, 528 (4th Cir. 2015). "Under the Eight Corners Rule, [Virginia courts] compare the 'four corners' of the underlying complaint with the 'four corners' of the policy to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." Id. "The duty to defend [is triggered] whenever the underlying complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Id. "But the duty to defend is not without limits." CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 155 (4th Cir. 2009). "To implicate the duty, the underlying complaint must allege some facts on which the insurer would be liable." Id. "Therefore, . . . if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, the duty to defend will not [be triggered]." Id.

In applying the Eight Corners Rule, "[t]he insured has the initial burden to establish a duty to defend," i.e., to "demonstrate that the [underlying] complaint alleges a covered injury."[4] Liberty, 792 F.3d at 528. If the insured satisfies this initial burden, "the burden shifts to the insurer to show that the policy's exclusionary language clearly and unambiguously brings the particular alleged act or omission within its scope." Id. at 529. In other words, "[t]he insured has the burden to prove coverage, while the insurer bears the burden of proving that an exclusion applies." Fed. Hill Homeowners Ass'n, Inc. v. Cmty. Ass'n Underwriters of Am., Inc., 384 F.

---

[4] This initial burden includes the burden to establish that the allegations in the underlying complaint fall "within the broad body of occurrences covered by [the] policy." Home Ins. Cos. V. P&P Contractors, Inc., 941 F.2d 1206, at *3 (4th Cir. Aug. 22, 1991) (Table); see also Dragas Mgmt. Corp. v. Hanover Ins. Co., 798 F. Supp. 2d 758, 762 (E.D. Va. 2011).

7

App'x 209, 211–12 (4th Cir. 2010). Accordingly, in this action, defendants bear the burden with regard to Count 1, which concerns coverage, and BMIC bears the burden with regard to Count 2, which concerns various exclusions.

Count 1 alleges that BMIC owes no duty to defend its insureds because the state court complaints do not allege "bodily injury" or "property damage" caused by an "occurrence." In its Motion for Summary Judgment, BMIC argues that the complaints only allege intentional conduct, which BMIC asserts does not constitute an "occurrence," and that even if the complaints alleged some negligent conduct, that conduct does not constitute an "occurrence" because the resulting property damage was confined to the townhouses themselves and therefore was expected from the standpoint of its insureds. In response, defendants argue that the complaints allege some negligent conduct, which defendants assert constitutes an "occurrence," and that the complaints imply some damage to property beyond the townhouses themselves which was unexpected from the standpoint of BMIC's insureds.

Count 2 alleges that BMIC owes no duty to defends its insureds because even if the state court complaints allege "bodily injury" or "property damage" caused by an "occurrence," several exclusions apply, including Coverage A(2)(a) regarding "expected or intended" property damage and Coverages A(2)(j)(5), A(2)(j)(6), and A(2)(l) as amended by Endorsement 2294, which collectively regard property damage to the insured's "work." The parties' arguments on Count 2 largely overlap with their arguments on Count 1; BMIC argues that these exclusions apply because the alleged property damage was confined to the townhouses themselves and therefore was expected from the standpoint of its insureds, and in response, defendants argue that the state court complaints imply some damage to property beyond the townhouses themselves, which was

unexpected from the standpoint of BMIC's insureds. As discussed below, BMIC has the better arguments on both counts.

1. **Count 1**

The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Dkt. 1-6 at 181; Dkt 1-7 at 170]. The Virginia Supreme Court recently construed the same definition of an "occurrence" in AES Corp. v. Steadfast Ins. Co.,[5] holding that "[t]he terms 'occurrence' and 'accident' are synonymous and refer to an incident that was unexpected from the viewpoint of the insured." 725 S.E.2d 532, 534–36 (Va. 2012). The court reasoned that "an 'accident' is commonly understood to mean an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated," and that "[a]n accidental injury" is commonly understood to mean an injury "that happens by chance, or unexpectedly." Id. The Fourth Circuit and district courts within it have held similarly. See, e.g., Fed. Hill Homeowners Ass'n, Inc. v. Cmty. Ass'n Underwriters of Am., Inc., 384 F. App'x 209, 212 (4th Cir. 2010); Robinson v. Nationwide Mut. Fire Ins. Co., 2020 WL 355211, at *4 (E.D. Va. Jan. 21, 2020); State Farm Fire & Cas. Co. v. Kessel, 2018 WL 4999968, at *5 (E.D. Va. June 28, 2018). In accordance with this construction, the Virginia Supreme Court has made clear that "an intentional act is neither an 'occurrence' nor an 'accident' and therefore is

---

[5] Indeed, the definition at issue here is used in many commercial general liability policies, and as a result has been frequently litigated. See, e.g., Liberty Mutual Fire Ins. Co. v. JM Smith Corp., 602 F. App'x 115, 120 (4th Cir. 2015); Nationwide Property & Cas. Ins. Co. v. Faraccio, 2017 WL 11502607, at *3 (E.D. Va. Oct. 18, 2017).

not covered by the standard [commercial general liability] policy." AES Corp., 725 S.E.2d at 536 (collecting cases).[6]

Here, the state court complaints are replete with explicit allegations of intentional conduct. For example, each complaint contains the central allegation that "[the underlying defendants'] concealment and misrepresentation[s] [regarding the water leaks] were intentional, intended to deceive, and were intended to induce [the underlying plaintiffs] into purchasing the [t]ownhouse[s]." Seale Complaint ¶ 66; W. Albrittain Complaint ¶ 45; Ward Complaint ¶ 56; see also Seale Complaint ¶¶ 85–86, 138, 140; W. Albrittain Complaint ¶¶ 58–59; Ward Complaint ¶ 119. These allegations accord with each complaint's allegation that the underlying defendants knew of the water leaks before they sold the townhouses to the underlying plaintiffs, having attempted and failed to repair the leaks during the construction process. See, e.g., Seale Complaint ¶¶ 46–47, 49–52, 85; W. Albrittain Complaint ¶¶ 39–40, 43, 58; Ward Complaint ¶¶ 40–41, 48. Because such intentional conduct is "neither an 'occurrence' nor an 'accident,'" these allegations, which represent the core of the state court complaints, have not triggered BMIC's duty to defend its insureds. AES Corp., 725 S.E.2d at 536.

Defendants argue that despite the state court complaints' extensive allegations of intentional conduct, they alternatively allege at least some negligent conduct. In support of that argument, defendants point to three paragraphs, out of approximately 360 in total, across the three complaints. See Sidney Simmonds' Brief in Opposition at 9. First, defendants point to two functionally identical paragraphs in the Seales' and Wards' constructive fraud claims. Specifically, the Seales allege that "[the underlying defendants'] concealment, or failure to

---

[6] The Virginia Supreme Court has recognized an exception to this rule where the intentional act causes an injury which "is out of the ordinary expectations of a reasonable person." See AES Corp., 725 S.E.2d at 536. That exception is not at issue in this civil action.

10

disclose, of [sic] the issues with the [t]ownhouse's roof and leaking, if not intentional, was done negligently, innocently, or mistakenly <u>in a manner to induce [the Seales] to enter into the [s]ales [c]ontract to their detriment, and [the underlying defendants] intended that [the Seales] would act upon such omission</u>." Seale Complaint ¶ 92 (emphasis added). Similarly, the Wards allege that "[the underlying defendants] concealment of, or failure to disclose, the defects with the [t]ownhouse, if not intentional, was done negligently, innocently, or mistakenly <u>in a manner to induce [the Wards] to enter into the [s]ales [c]ontract and subsequently purchase the [t]ownhouse to their detriment, and [the underlying defendants] intended that [the Wards] would act upon such omission</u>." Ward Complaint ¶ 106 (emphasis added). Second, defendants point to one paragraph in the Seales' general factual allegations. Specifically, the Seales allege that Sidney Simmonds, Cathedral View, LLC's agent, made various "comments and concealments" about the construction of the townhouse, "and either knew, or should have known, that the [t]ownhouse was not well-built and indeed suffered from water infiltration and leaking issues." Seale Complaint ¶ 64. Defendants' argument is unpersuasive.

With regard to the two paragraphs in the Seales' and Wards' constructive fraud claims, each paragraph is internally inconsistent and unsupported by any factual allegations. For example, the paragraphs allege that the underlying defendants' concealment or nondisclosure "if not intentional, was done negligently, innocently, or mistakenly," then state that the underlying defendants acted "in a manner <u>to induce</u> [the underlying plaintiffs] to enter into the [s]ales [c]ontract . . . to their detriment" and "<u>intended</u> that [the underlying plaintiffs] would act upon such omission." Seale Complaint ¶ 92 (emphasis added); Ward Complaint ¶ 106 (emphasis added). These two statements are "diametrically opposed and mutually inconsistent." <u>Allison v. Brown</u>, 801 S.E.2d 761, 768 (Va. 2017). It is entirely illogical, if not impossible, for one

11

negligently to engage in misleading conduct and simultaneously possess the specific intent to induce others to rely on that conduct to their detriment. See, e.g., Weichter v. Ried, 2006 WL 1494675, at *4 (Va. Cir. Ct. May 31, 2006) (explaining that "negligence by definition is not an intentional wrong" because "[i]f a party intends the damage caused to another, then the tort is no longer negligence but one of several other intentional torts").

Moreover, "negligence is a conclusion of law from facts sufficiently pleaded." Lynchburg Traction & Light Co. v. Guill, 57 S.E. 644, 644 (Va. 1907); see also Collett v. Cordovana, 77 S.E.2d 584, 588 (Va. 2015). Here, although each paragraph summarily alleges that the underlying defendants' concealment or nondisclosure "if not intentional, was done negligently, innocently, or mistakenly;" there are no facts alleged in the complaints to support the claim that the underlying defendants' conduct was negligent, innocent, or mistaken. Seale Complaint ¶ 92; Ward Complaint ¶ 106. Indeed, to the contrary, as previously discussed, each of the state court complaints explicitly alleges that the underlying defendants knew of the water leaks before they sold the townhouses to the underlying plaintiffs, which is inconsistent with an allegation of negligence. See, e.g., Seale Complaint ¶¶ 46–47, 49–52, 85; W. Albrittain Complaint ¶¶ 39–40, 43, 58; Ward Complaint ¶¶ 40–41, 48. "To implicate the duty [to defend], the underlying complaint must allege some facts on which the insurer would be liable;" legal conclusions are insufficient. CACI Int'l, 566 F.3d at 155 (emphasis added). Here, the state court complaints' mere "use of the word 'negligence' does not compel [the Court] to find that a claim was an 'occurrence' under Virginia law" such that the duty to defend has been triggered. Lark v. W. Heritage Ins. Co., 64 F. Supp. 3d 802, 808 (W.D. Va. 2014); see also State Farm Fire, 2018

12

4999946, at *5 ("[M]erely alleging negligence is not enough to garner coverage of the negligent act as an accident or occurrence . . . .").[7]

With regard to the paragraph in the Seales' general factual allegations, although it alleges that one of the underlying defendants, Sidney Simmonds, made various "comments and concealments" about the construction of the townhouse and "knew, or should have known that the [t]ownhouse was not well-built and indeed suffered from water infiltration and leaking issues," the suggestion that Simmonds may have been unaware of the water leaks directly contradicts the preceding allegations. Seale Complaint ¶ 64. For example, the Seales allege that "Simmonds was . . . constantly in communication with Nancy and Tom Albrittain and frequently discussed the townhouse and issues related to the quality of the townhouse, including the leaking," and that "Simmonds was . . . involved in the repair work performed on the townhouse prior to [the Seales'] purchase of the townhouse," including attempts "to repair the leaking." Id. ¶¶ 50–51, 58. The Eight Corners Rule "does not require [courts] to abandon the rule of reason." CACI Int'l, 566 F.3d at 159. Here, defendants' argument that the state court complaints allege negligent conduct simply "finds no grounding in the language of the complaints." Id.; see also Travelers Home & Marine Ins. Co. v. Lander, 422 F. Supp. 3d 1096, 1103 (W.D. Va. 2019) (holding that the duty to defend was not triggered because the underlying complaints "allege[d] almost solely intentional conduct" and "there [was] simply no basis for construing the factual

---

[7] "[U]nder the general rules of pleading, . . . material facts constituting a cause of action shall be stated by direct and positive allegations clearly informing the opposite party of the true nature of the claim he is to meet." Manassas Park Development Co. v. Ouffutt, 124 S.E. 2d 29, 30–31 (Va. 1962). "[A]lternative pleading" is "a modification of the general rule" permitted only "where the pleader has no knowledge as to which two sets of facts should be alleged and the opposite party would be equally liable under either." Id. For the reasons previously discussed, that is not the case here; the state court complaints plainly allege a single set of facts of which the underlying plaintiffs have ample knowledge.

allegations in the underlying actions to mean that [the underlying plaintiffs'] injuries were the result of unintentional or accidental conduct"). Accordingly, none of these paragraphs has triggered BMIC's duty to defend its insureds.

Even if the state court complaints had adequately alleged that the underlying defendants engaged in negligent conduct, that conduct still would not constitute an "occurrence." "Allegations of negligence are not synonymous with allegations of an accident" and an "occurrence." AES Corp., 725 S.E.2d at 537. Rather, "[t]he terms 'occurrence' and 'accident' . . . refer to an incident that was unexpected from the viewpoint of the insured." Id. 536. As relevant here, "damage resulting from the insured's defective performance of a contract and limited to the insured's work or product is not covered by a commercial general liability policy because it is expected from the standpoint of the insured." Hotel Roanoke Conference Ctr. Comm'n v. Cincinnati Ins. Co., 303 F. Supp. 2d 784, 787 (W.D. Va. 2004). For example, "contractors, when they agree to construct a building, expect that they will have to repair any defects in their work so as to deliver the product they promised to provide." Id. "Accordingly, to the extent that [an] [underlying complaint] asserts clams against [insured contractors] for the cost of repairing the work called for in their respective construction contracts, any property damage [was] 'expected' [from the contractors' standpoint] and thus not caused by an occurrence as that term is defined" in commercial general liability policies. Id. In contrast, "[d]amages to property other than the insured's work or product would be 'unexpected' and, thus, caused by an occurrence." Id. Although "the Virginia Supreme Court has not appeared to consider" this question, "[t]he decision in Hotel Roanoke has been cited favorably by courts within the Fourth Circuit with regard to its conclusion that an insured's defective performance of a contract is not

an occurrence under a commercial general liability policy." Ind. Lumbermens Mut. Ins. Co. v. Timber Treatment Techs., LLC, 2017 WL 7691870, at *7 (E.D. Va. Oct. 25, 2017).

Here, each of the state court complaints alleges that the underlying defendants, who were business partners in the construction and sale of the townhouses, caused property damage to the townhouses, but none of the complaints alleges that the underlying defendants caused damage to any other property, such as the underlying plaintiffs' personal property. See, e.g., Seale Complaint ¶¶ 53–54, 71; W. Albrittain Complaint ¶¶ 36–38, 48; Ward Complaint ¶¶ 44–46, 61. Under the reasoning of Hotel Roanoke, the damage to the townhouses was "expected from the standpoint of the insured," and therefore the underlying defendants' allegedly negligent conduct does not constitute an "occurrence" under the Policy. 303 F. Supp. 2d at 787; see also Ind. Lumbermens, 2017 WL 7691870, at *7. Defendants' only argument in response is that the state court complaints "give rise to the implication that personal property in the townhouses was damaged as a result of the events at issue," See Sidney Simmonds' Brief in Opposition at 11; however, "[w]hether [the underlying plaintiffs] can conjure some set of facts other than those alleged [which] would trigger a duty to defend is beside the point; [t]he only 'facts' at issue are the [insurance policy's] plain terms and factual allegations asserted in the [underlying complaints]." Global Title, LLC v. St. Paul Fire & Marine Ins. Co., 788 F. Supp. 2d 453, 461 (E.D. Va. 2011). Accordingly, defendants have failed to meet their initial burden to "demonstrate that the [underlying] complaint alleges a covered injury," and BMIC is entitled to summary judgment on Count 1 of its complaint. Liberty, 792 F.3d at 528.

2. **Count 2**

For similar reasons, even if defendants had met their initial burden to demonstrate coverage, several exclusions in the Policy would apply as a matter of law. First, Coverage

A(2)(a), which excludes "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured," would apply. As previously discussed, under the reasoning of Hotel Roanoke, "[w]hen an insured defectively performs a contract and the defective performance only damages the insured's work or product," that damage "is expected for purposes of a commercial general liability insurance policy" and therefore both is not caused by an "occurrence" and is "excluded from coverage" under this exclusion. 303 F. Supp. 2d at 789.

Second, Coverages A(2)(j)(5), A(2)(j)(6), and A(2)(l) as amended by Endorsement 2294, which the parties' collectively refer to as the "your work" exclusions, would also apply. "The primary purpose of the 'your work' exclusion[s] is to prevent [general commercial] liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business." Jessco, Inc. v. Builders Mut. Ins. Co., 472 F. App'x 225, 229 (4th Cir. 2012). The "your work" exclusions "withdraw[] coverage in cases where the insured causes property damage to work done by the insured or its subcontractors." Id. In contrast, they "do[] not exclude coverage for damage to a third-party's work." Id. In short, "[w]here all of the damage that is being claimed is damage to the work of the insured which is caused by the work of the insured, the 'your work' exclusion will apply to preclude coverage." Id. Here, defendants do not dispute that the townhouses are the underlying defendants' "work," and as previously discussed, the state court complaints only allege damage to the townhouses themselves. Accordingly, even if defendants had met their initial burden to demonstrate coverage, BMIC has met its burden "to show that the policy's exclusionary language clearly and unambiguously brings the particular alleged act or omission within its scope," and BMIC is entitled to summary judgment on Count 2 of its complaint. Liberty, 792 F.3d at 529.

III. CONCLUSION

For the reasons stated above, by an Order to be issued with this Memorandum Opinion, BMIC's Motion for Summary Judgment [Dkt. 49] will be granted.

Entered this 7th day of May, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge